UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

SHAMARA BAILEY BORDEN,

        Plaintiff,

    v.                                    **MEMORANDUM AND ORDER**
                                                     23-CV-8330 (RPK) (CLP)

THE CITY OF NEW YORK,

        Defendant.

-------------------------------------------------------x

RACHEL P. KOVNER, United States District Judge:

        Plaintiff Shamara Bailey Borden was employed by the New York City Administration for Children's Services ("ACS") from 2017 until her resignation in June 2023. Plaintiff alleges that she was sexually harassed by two different supervisors and that as a result she felt forced to resign. In this lawsuit, she brings claims for a hostile work environment based on her sex and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*; as well as claims for sexual harassment and retaliation under the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*

        Defendant moves for partial dismissal, arguing that plaintiffs' claims are time barred in part, that plaintiff has not plausibly alleged a hostile-work-environment claim under Title VII or the NYSHRL, and that plaintiff has not plausibly alleged that she was constructively discharged. Defendant's motion is granted.

# BACKGROUND

The following facts are taken from plaintiff's amended complaint and are assumed true for the purposes of this order.

Plaintiff was employed by ACS between 2017 until her resignation in June 2023. Am. Compl. ¶¶ 17, 50 (Dkt. #11). She was hired as an officer and then promoted to a sergeant in 2019. Am. Compl. ¶¶ 17–18. During the course of her employment, plaintiff's amended complaint alleges that she was subjected to sexual harassment by two supervisors: Gary Sylvester and David Inshiqaq.

### A.     Plaintiff's Allegations About Gary Sylvester

On April 12, 2020, Sylvester "remarked to Plaintiff that her stoic and professional behavior might lead some individuals who are not acquainted with her to perceive her as aggressive." Am. Compl. ¶ 20. He "suggest[ed] that a night with him would change this perceived 'aggressiveness', asserting 'I take you home and tender you right on up and all that aggression would go right out the window.'" *Ibid.* That same week, Sylvester made unsolicited comments to plaintiff about how a "female caller had allegedly expressed interest in a threesome with him," continuing on to "describe graphically and vulgarly the hypothetical threesome." *Id.* ¶¶ 21–22. After these incidents, plaintiff filed an Equal Employment Opportunity ("EEO") complaint with the Executive Director of Administration and the EEO officer, but no responsive action was taken. *Id.* ¶¶ 23–24.

In July 2020, plaintiff followed up with the Director of Administration and Senior Assistant Commissioner. *Id.* ¶ 25. The Director of Administration informed plaintiff that, for her claim against Sylvester to "gain traction," she would need "smoking gun" evidence. *Ibid.* The Senior

2

Assistant Commissioner assured plaintiff that he would engage with Sylvester about her complaints and follow-up, but never did. *Id.* ¶ 29.

### B. Plaintiff's Allegations About David Inshiqaq

On March 9, 2022, during a conversation about snack preferences, plaintiff mentioned to Inshiqaq that she enjoyed pickles. *Id.* ¶ 30. Inshiqaq responded by "stating his keen interest in watching her eat a pickle," going so far as to "suggest[] he would replay camera footage to witness the act." *Id.* ¶¶ 30–31. About nine months later, in December 2022, Inshiqaq approached plaintiff from behind, rested his chin on her head, and referenced her upcoming gastric sleeve surgery by mentioning that he "like[d] her extra weight" while caressing her arm. *Id.* ¶ 33. Plaintiff also alleges that in November 2022, she applied for a promotion to a lieutenant position within the department, but the position was given to someone else who Inshiqaq told plaintiff was "pre-selected." *Id.* ¶ 32. Plaintiff reported Inshiqaq's behavior to Chief James Perrino, who advised plaintiff against making a complaint because "the individuals positioned to review and address the complaint were friends and close associates of" Inshiqaq. *Id.* ¶ 34.

On April 14, 2023, plaintiff told Inshiqaq that she was considering resigning. *Id.* ¶ 35. Plaintiff indicated that she was "alternatively seeking to be transferred" from her current role, to get away from Inshiqaq. *Ibid.* Inshiqaq denied her request for a transfer. *Id.* ¶ 36. Plaintiff sought Chief Perrino's intervention, but he declined to act, telling her that any transfer would require Inshiqaq's approval. *Id.* ¶ 38. Plaintiff eventually secured a competing job offer within ACS, but Inshiqaq intentionally changed her work schedule in order to prevent her from attending a required event, forcing her to turn down the offer. *Id.* ¶ 40.

A week after this incident, Inshiqaq requested that Chief Perrino grant plaintiff's request to be transferred to a field position. *Id.* ¶ 41. In a conversation on April 24, 2023, plaintiff

confirmed with Chief Perrino that this transfer occurred solely based on Inshiqaq's recommendation. *Id.* ¶ 42.

After plaintiff's transfer, Inshiqaq ensured that plaintiff worked under Inshiqaq's direct supervision. *Id.* ¶ 43. Specifically, he "manipulated work assignments to compel [plaintiff] to act as his driver and escort for approximately six to seven full days." *Id.* ¶ 44. Plaintiff was required to endure "extensive one-on-one interaction" with Inshiqaq, including ferrying him to and from his residence and accompanying him to official engagements like funerals and job fairs. *Ibid.* These assignments were not within plaintiff's regular job duties and were inconvenient, due to the distance between plaintiff's new duty station and Inshiqaq's residence. *Id.* ¶ 45. Plaintiff alleges that these duties would ordinarily be viewed as optional assignments, rather than mandatory, and that Inshiqaq deviated from normal practice in order to harass her. *Id.* ¶ 46. Inshiqaq told plaintiff that "no matter where she goes, he is her boss." *Id.* ¶ 47.

A few weeks after the transfer, Chief Perrino informed plaintiff that she would be reassigned to work full-time under Inshiqaq. *Id.* ¶ 48. When she objected, her upcoming interview for a promotion was abruptly cancelled, which she believed to be a penalty for opposing Inshiqaq's discriminatory and harassing conduct. *Id.* ¶ 49.

By June 2023, plaintiff decided to tender her resignation. *Id.* ¶ 50. When she informed Chief Perrino, he asked her to hold off on submitting her resignation, promising her a solution to her grievances regarding Inshiqaq's conduct. *Id.* ¶¶ 51–52. Despite this promise, he did not follow-up, and plaintiff proceeded with her planned resignation from ACS. *Id.* ¶ 53.

C.      **Procedural History**

Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on August 21, 2023. *See* Decl. of Eric Arbizo, Ex. 1 (Dkt. #18-2).[1] After receiving notice of her right to sue from the EEOC, Am. Compl. 15, she filed this lawsuit on November 9, 2023, *see* Compl. (Dkt. #1). She brings claims for sex-based hostile work environment under Title VII and the NYSHRL, sexual harassment under the NYCHRL, and retaliation under all three laws. Am. Compl. ¶¶ 59–77.

Defendant now moves to partially dismiss plaintiff's complaint. Def.'s Mem. of L. in Supp. of Partial Mot. to Dismiss ("Def.'s Mot.") (Dkt. #18). *First*, defendant moves to dismiss all of plaintiff's claims to the extent they rely on the conduct of Gary Sylvester as time-barred. *Id.* at 7–9. *Second*, defendant moves to dismiss plaintiff's hostile-work-environment claims under Title VII and the NYSHRL because plaintiff has not plausibly alleged that Inshiqaq engaged in harassment that was severe or pervasive. *Id.* at 9–14. And *third*, defendant moves to dismiss plaintiff's constructive discharge claim because plaintiff has not plausibly alleged working conditions so intolerable that a reasonable person would have felt compelled to resign. *Id.* at 14–17. Defendant does not move to dismiss plaintiff's remaining claims, which consist of sexual harassment under the NYCHRL and retaliation under Title VII, the NYSHRL, and the NYCHRL. *See* Am. Compl. ¶¶ 64–65, 69–77.

---

[1] Plaintiff attached the EEOC's right-to-sue letter, which does not include the date on which plaintiff filed her charge, to her complaint. *See* Am. Compl. 15. Defendant attached to its motion to dismiss a transmittal form prepared by EEOC to the Department of Justice regarding plaintiff's right to sue letter, which indicates plaintiff's charge was filed with the EEOC on August 21, 2023. Decl. of Eric Arbizo, Ex. 1. Though submitted by the defendant, the Court may consider this document because it is "integral to plaintiff's discrimination claims." *Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 591 n.1 (E.D.N.Y. 2013) (brackets and citation omitted) (citing cases). Plaintiff does not object to the Court's consideration of the document. *See generally* Pl.'s Opp'n (Dkt. #19).

5

**STANDARD OF REVIEW**

When evaluating a motion for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a court must "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (citation omitted). To avoid dismissal, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint, in other words, must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. While the plausibility standard "is not akin to a 'probability requirement,'" it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).

**DISCUSSION**

Defendant's motion for partial dismissal is granted.

**I.  Claims Based on Sylvester's Conduct Are Time Barred**

Defendant moves to dismiss plaintiff's claims, to the extent they are based on conduct by Gary Sylvester, as time barred. The motion is granted.

**A.  Title VII**

As a prerequisite to filing suit under Title VII, individuals alleging employment discrimination must "file a charge with the EEOC within 180 or, in states like New York that have local administrative mechanisms for pursuing discrimination claims, 300 days 'after the alleged unlawful employment practice occurred.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78–79 (2d Cir. 2015) (quoting 42 U.S.C. § 2000e–5(e)(1)). "[T]he word 'practice' in this context refers to 'a discrete act or single "occurrence,"' and . . . a 'discrete retaliatory or discriminatory act "occurred" on the day that it "happened."'" *Id.* at 79 (quoting *Nat'l R.R.*

6

*Passenger Corp. v. Morgan*, 536 U.S. 101, 110–11 (2002)). "For plaintiffs alleging unlawful discrimination or retaliation, discrete actions such as 'termination, failure to promote, denial of transfer, or refusal to hire are easy to identify' and are 'not actionable if time barred, even when they are related to acts alleged in timely filed charges.'" *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 259 (2d Cir. 2023) (quoting *Morgan*, 81 F.4th at 114–15).

"Claims alleging a hostile work environment require a different analysis than discrimination or retaliation claims because '[t]heir very nature involves repeated conduct.'" *Banks*, 81 F.4th at 259–60 (quoting *Morgan*, 536 U.S. at 115). "Unlike discrete discriminatory or retaliatory actions, incidents that give rise to a hostile work environment 'occur[] over a series of days or perhaps years and . . . a single act of harassment may not be actionable on its own.'" *Id.* at 260 (quoting *Morgan*, 536 U.S. at 115). "[C]onsideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *Morgan*, 536 U.S. at 105.

Accordingly, if any act alleged to contribute to a hostile work environment "falls within the statutory time period," the court must "determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice." *Morgan*, 536 U.S. at 120; *see McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 76 (2d Cir. 2010). If so, "the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Morgan*, 536 U.S. at 117. This inquiry "turns on whether the timely and untimely actions are 'sufficiently similar in kind.'" *Sylla v. N.Y.C. Dep't of Educ.*, 664 F. Supp. 3d 311, 324 (E.D.N.Y. 2023) (quoting *Richard v. N.Y.C. Dep't of Educ.*, No. 16-CV-957 (MKB), 2017 WL 1232498, at *14 (E.D.N.Y. Mar. 31, 2017)). Factors courts consider for the relatedness

7

determination include "the similarity of the environment in which the incidents took place, the nature of the incidents, and the temporal discontinuity of the incidents." *Kocar v. Port Auth. of N.Y. & N.J.*, No. 19-CV-11508 (AT), 2022 WL 624070, at *5 (S.D.N.Y. Mar. 2, 2022) (citing *McGullam*, 609 F.3d at 77, 82). Ultimately, the relatedness inquiry is "an individualized assessment," owing to the "fact-specific and sensitive" nature of hostile-work-environment claims. *McGullam*, 609 F.3d at 77.

Here, the offending conduct by Sylvester occurred in April 2020, and is not encompassed in the 300-day period covered by plaintiff's August 21, 2023 EEOC charge. *See* Am. Compl. ¶¶ 19–29. This Court's job is accordingly to determine whether Sylvester's conduct is "sufficiently related" to the later actions by Inshiqaq such that they can be said "to be part of the same alleged hostile work environment practice."[2] *McGullam*, 609 F.3d at 77.

It is not. Plaintiff alleges that Sylvester made unwelcome comments of a sexual nature to her on two separate occasions within the span of a single week in April 2020. *See* Am. Compl. ¶¶ 20–22. By contrast, she alleges that Inshiqaq engaged in a campaign of harassment between March 2022 and her resignation in June 2023 that consisted of sexual comments, but also physical touching, interference with plaintiff's career, and a transfer to less desirable job duties under Inshiqaq's control. *See id.* ¶¶ 30–50. The fact that the conduct was perpetrated by two different supervisors, the differences in the nature of the two supervisors' allegedly discriminatory behavior, and the nearly two-year gap between Sylvester's conduct and Inshiqaq's, apparently without any intervening incident, together establish that Sylvester's conduct is not sufficiently related to Inshiqaq's to constitute the same alleged hostile-work-environment practice. *See Kocar*, 2022 WL

---

[2] Some of Inshiqaq's actions contributing to the alleged hostile work environment likewise fall outside the 300-day period covered by plaintiff's EEOC charge, but defendant does not dispute that these actions are part of the same pattern of conduct as Inshiqaq's actions falling within the 300-day period. *See* Def.'s Mot. 8–9 (arguing only that "[p]laintiff's claims based on the alleged conduct of Sylvester are time barred").

624070, at *6 (finding dissimilar instances of discriminatory conduct perpetrated by different employees with "no overlap in perpetrators within and outside the limitations period" separated by multiple years to not constitute the same hostile work environment); *Armstrong v. Metro. Transp. Auth.*, No. 07-CV-3561 (DAB), 2015 WL 992737, at *4 (S.D.N.Y. Mar. 3, 2015) (concluding "difference[s] in perpetrators, supervisors, unit assignment, and type of harassment" precluded finding of relatedness); *see also McGullam*, 609 F.3d at 78 ("Although [an] incident-free interval [of one year] does not preclude relatedness, it renders less plausible the notion that the sleep-over comment is of a piece with the production department conduct.").

Plaintiff argues in the alternative that, even if Sylvester's conduct is not actionable as part of plaintiff's hostile-work-environment claim, it should still be admissible as "background evidence" in support of plaintiff's timely claims. Pls.' Opp'n 7–8. "[A]n employee is not barred 'from using . . . prior acts as background evidence in support of a timely claim,'" even if claims based on those prior acts would be time barred. *McGullam*, 609 F.3d at 79 (quoting *Morgan*, 536 U.S. at 113); *see Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 176–77 (2d Cir. 2005) (explaining the role background evidence of time barred conduct plays in the consideration of timely claims). Accordingly, the Court will consider plaintiff's allegations about Sylvester's conduct as background evidence for plaintiff's timely claims, to the extent they are relevant.

B. **NYSHRL and NYCHRL**

"[C]laims under the NYSHRL and the NYCHRL are time-barred unless filed within three years of the alleged discriminatory acts." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007). The Second Circuit has not decided whether the statute of limitations under the NYSHRL and NYCHRL is tolled while a complaint is pending with the EEOC, *see Shoejae v. Harlem Hosp. Ctr.*, 764 F. App'x 113, 114 n.2 (2d Cir. 2019), but the "clear trend" among district courts is that "filing an EEOC charge does toll those claims," *Schneider v. Wal-Mart Stores, Inc.*,

9

No. 16-CV-2010 (NSR), 2019 WL 294309, at *3 (S.D.N.Y. Jan. 23, 2019) (citing cases). Because plaintiff filed her EEOC charge on August 21, 2023, claims based on conduct occurring prior to August 21, 2020 are time barred.

In *Morgan*, the Supreme Court analyzed the timeliness of a hostile-work-environment claim under Title VII. *See Morgan*, 536 U.S. at 104. Courts apply the same analysis when assessing the timeliness of hostile-work-environment claims brought under the NYSHRL and NYCHRL. *See, e.g.*, *Banks*, 81 F.4th at 260–61 (applying *Morgan* to analyze the timeliness of a hostile-work-environment claim under the NYSHRL); *Abdelal v. Kelly*, 726 F. App'x 8, 11–12 (2d Cir. 2018) (applying *Morgan* to analyze the timeliness of hostile-work-environment claims under the NYSHRL and NYCHRL); *Drew v. Plaza Constr. Corp.*, 688 F. Supp. 2d 270, 278–79 (S.D.N.Y. 2010) (same). Accordingly, for the same reasons that apply to plaintiff's Title VII claims, plaintiffs' NYSHRL and NYCHRL claims are time barred to the extent they rely on allegations about Sylvester's conduct as well.

## II. Plaintiff Has Not Plausibly Alleged a Hostile Work Environment

Defendant moves to dismiss plaintiff's hostile-work-environment claims under Title VII and the NYSHRL for failure to state a claim. The motion is granted.

### A. Title VII

"To state a claim for a hostile work environment in violation of Title VII," a plaintiff must plead facts tending to show that the complained of conduct: "(1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (quotation marks, ellipsis, and citation omitted). To determine whether the environment is sufficiently abusive, "a district court considers the totality of the circumstances,

including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's job performance." *Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 287 (2d Cir. 2020) (quotation marks, brackets, and citation omitted). The Second Circuit "treats the first two of these factors—the frequency and the severity of the misconduct—as the principal focus of the analysis; the last three factors are specific considerations within the severity inquiry." *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 82 (2d Cir. 2009). "As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (quotation marks and citation omitted). "Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Ibid.* Finally, "[i]t is axiomatic that the plaintiff also must show that the hostile conduct occurred because of a protected characteristic." *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015).

Plaintiff's non-time barred allegations do not plausibly amount to a hostile work environment. To begin, plaintiff does not allege that much of the conduct of which she complains "occurred because of a protected characteristic"—her sex. *Ibid.* "Facially neutral incidents may be included, of course, among the 'totality of the circumstances' that courts consider in any hostile work environment claim, so long as a reasonable fact-finder could conclude that they were, in fact, based on sex." *Alfano*, 294 F.3d at 378. "But this requires some circumstantial or other basis for inferring that incidents sex-neutral on their face were in fact discriminatory." *Ibid.* "Incidents, however abusive, that are not gender-related are not relevant to establish a claim" of a hostile work environment. *Beale v. Mt. Vernon Police Dep't*, 895 F. Supp. 2d 576, 587 (S.D.N.Y. 2012)

11

(quoting *Casalino v. N.Y. State Cath. Health Plan, Inc.*, No. 09-CV-2583 (LAP), 2012 WL 1079943, at *7 (S.D.N.Y. Mar. 30, 2012)).

Many of plaintiff's allegations amount to dissatisfaction with scheduling decisions, work assignments, and missed promotions. In November 2022, plaintiff alleges that she was not selected for a promotion she had sought. Am. Compl. ¶ 32. In April 2023, plaintiff asked Inshiqaq for a transfer away from his command but was denied. *Id.* ¶¶ 35–36. Soon after, Inshiqaq changed plaintiff's work schedule to prevent her from attending an event she needed for a different job offer. *Id.* ¶ 40. Between late April 2023 and when plaintiff quit in June, Inshiqaq manipulated plaintiff's schedule so that she would work more closely under him in less favorable assignments. *Id.* ¶¶ 43–50. Two weeks before she quit, plaintiff also learned that Chief Perrino was planning to reassign her to work full time under Inshiqaq—when she objected, an interview for a promotion was cancelled. *Id.* ¶¶ 48–49. Plaintiff's complaints about Inshiqaq's conduct to Chief Perrino went unanswered. *Id.* ¶¶ 34, 38, 49, 51–53.

Plaintiff does not plausibly allege that these incidents were related to her sex or the earlier harassment she experienced at the hands of Inshiqaq. Notably, plaintiff does not allege that Inshiqaq ever sexually harassed plaintiff after December 2022, including during the time after she was transferred to work more closely under his supervision. These therefore did not contribute to a hostile work environment on the basis of plaintiff's sex. *See Beale*, 895 F. Supp. 2d at 587–88 (finding that instances of supervisor yelling at plaintiff for non-sex-based reasons did not contribute to hostile work environment based on sex, despite same supervisor on other occasions engaging in sex-based harassment); *cf. Sanderson v. Leg Apparel LLC*, No. 19-CV-8423 (GHW), 2020 WL 3100256, at *6, 8–9 (S.D.N.Y. June 11, 2020) (finding that black plaintiff had met his

12

burden to plead that his heavier workload contributed to race-based hostile work environment claim because he alleged that similarly situated white colleagues were not assigned as much work).

What remains are plaintiff's allegations that Inshiqaq, plaintiff's supervisor, twice targeted plaintiff with unwelcome sexual innuendos: in March 2022 and again approximately nine months later in December. Am. Compl. ¶¶ 30–31, 33. On the second occasion, Inshiqaq also grabbed plaintiff from behind, resting his chin on her head and caressing her arm. *Id.* ¶ 33.

Inshiqaq's conduct was neither pervasive nor severe enough to plausibly constitute a hostile work environment. Whereas "repeated touching of intimate parts of an unconsenting employee's body is by its very nature severely intrusive," "[c]asual contact" such as "[a] hand on the shoulder, a brief hug, or a peck on the cheek" would not generally "create a hostile environment in the absence of aggravating circumstances such as continued contact after an objection." *Redd v. New York Div. of Parole*, 678 F.3d 166, 177, 179 (2d Cir. 2012) (emphasis and internal citation omitted). Further, "[f]or sexist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of sexual enmity." *Dabney v. Christmas Tree Shops*, 958 F. Supp. 2d 439, 458 (S.D.N.Y. 2013), *aff'd sub nom. Dabney v. Bed Bath & Beyond*, 588 F. App'x 15 (2d Cir. 2014) (internal quotation marks and citations omitted). Separated in time by nine months, the two incidents described in plaintiff's complaint—sexual innuendo and being grabbed on the head and arm from behind—are quintessential "[i]solated acts," which generally do not "meet the threshold of severity or pervasiveness." *Alfano*, 294 F.3d at 374.

The Second Circuit has found no hostile work environment to exist as a matter of law on facts similar to these. For example, in *Quinn v. Green Tree Credit Corp.*, the plaintiff alleged that her supervisor had told her that she "had been voted the 'sleekest ass' in the office" and that, "on

13

another occasion, he 'deliberately touched [her] breasts with some papers that he was holding in his hand.'" 159 F.3d 759, 768 (2d Cir. 1998), *abrogated on other grounds by Morgan*, 536 U.S. 101.  The Second Circuit concluded that these "obviously offensive and inappropriate" acts were "sufficiently isolated and discrete that a trier of fact could not reasonably conclude that they pervaded [the plaintiff's] work environment" and that they were not "of sufficient severity to alter the conditions of [the plaintiff's] employment without regard to frequency or regularity."  *Ibid.*  Similarly, in *Mormol v. Costco Wholesale Corp.*, the plaintiff alleged that her supervisor had sexually propositioned her twice in the span of one month, and then, when she did not agree, retaliated against her by cutting her hours and issuing her a pretextual disciplinary writeup.  364 F.3d 54, 55–56 (2d Cir. 2004).  The Second Circuit ruled that these events "were not sufficiently severe or pervasive to create a hostile work environment" and that the alleged harassment was "not sufficiently severe to overcome its lack of pervasiveness."  *Id.* at 58–59.  Plaintiff's allegations are of a piece with *Quinn* and *Mormol* and therefore fail to state a claim for hostile work environment.

    Plaintiff relies on *Schiano v. Quality Payroll Systems, Inc.*, 445 F.3d 597 (2d Cir. 2006), but *Schiano* involved more conduct, in terms of quantity, and more egregious conduct, in terms of severity, than alleged by plaintiff.  There, the plaintiff's supervisor engaged in a sustained campaign of harassment over the course of five months.  *See id.* at 600.  He repeatedly sexually propositioned her; commented on plaintiff's looks and speculated about the type of underwear she wore with another coworker; pulled up her skirt at an office Christmas party in front of other coworkers, touched her on her upper thigh, and took a photo; and, at work, approached her from behind, placed his hands on her back and neck and leaned into her while she worked on "five or six" separate occasions.  *Id.* at 601–02.  This sustained campaign of harassment is not comparable to two isolated instances over the course of nine months.  Due to the disparity in the quantity and

14

severity of allegations in these cases, the fact that the Second Circuit found *Schiano*'s facts to survive summary judgment has little bearing on whether plaintiff has stated a claim here.

Because plaintiff has not stated a hostile-work-environment claim under Title VII, defendant's motion to dismiss this claim is granted.

**B.     NYSHRL**

Prior to 2019, hostile-work-environment claims under Title VII and the NYSHRL were governed by the same standard. *See Summa v. Hofstra Univ.*, 708 F.3d 115, 123–24 (2d Cir. 2013). In June 2019, "[t]he New York State Legislature passed several amendments to the NYSHRL . . . , the effect of which [was] to render the standard for claims closer to the [more lenient] standard under the NYCHRL." *Jemmott v. N.Y.C. Health & Hosps. Corp.*, No. 19-CV-989 (RPK) (ST), 2022 WL 4468129, at *11 n.3 (E.D.N.Y. Sept. 26, 2022) (citation omitted). One change was that the standards for hostile-work-environment claims under Title VII and the NYSHRL diverged, with the NYSHRL eschewing the "severe or pervasive" standard of liability. *See* N.Y. Exec. Law § 296(1)(h); *see, e.g.*, *Ferrando-Dehtiar v. Anesthesia Grp. of Albany, P.C.*, 727 F. Supp. 3d 165, 189 (N.D.N.Y. 2024); *Mitura v. Finco Servs., Inc.*, 712 F. Supp. 3d 442, 452–53, 452 n.4 (S.D.N.Y. 2024); *Mayorga v. Greenberg*, No. 22-CV-387 (AMD) (RML), 2023 WL 6307994, at *8 (E.D.N.Y. Sept. 28, 2023). "[T]he NYSHRL now requires a plaintiff to establish that she was subjected to inferior terms, conditions or privileges of employment because of the individual's membership in one or more protected categories." *Ferrando-Dehtiar*, 727 F. Supp. 3d at 189 (quotation marks, ellipsis, and citation omitted).

Defendant moves to dismiss plaintiff's NYSHRL hostile-work-environment claim, arguing that "[p]laintiff's non-time barred allegations are isolated events, occurring only on two occasions and nine months apart," and therefore "did not result in any alleged inferior condition of her employment." Def.'s Mot. 13–14. Plaintiff's opposition does not respond to defendant's

15

arguments for dismissal of this claim. In fact, the only time plaintiff mentions the NYSHRL at all is to assert that "[c]laims for hostile work environment under Title VII and NYSHRL are analyzed using the same standard," Pl.'s Opp'n 9, which, as described above, is an incorrect statement of the law for claims like plaintiff's that accrued after the amendments to the NYSHRL in 2019. Because plaintiff has effectively "failed to oppose [dismissal of this claim] in her opposition to [defendant's] motion to dismiss," the Court dismisses this claim as abandoned. *Wilkov v. Ameriprise Fin. Servs., Inc.*, 753 F. App'x 44, 46 n.1 (2d Cir. 2018); *see, e.g.*, *Mirvis v. Quay*, No. 19-CV-2573 (LDH) (VMS), 2023 WL 5671935, at *10 (E.D.N.Y. Sept. 1, 2023) (deeming claim abandoned where plaintiff's opposition did "not substantively respond to Defendants' legal argument" in the motion to dismiss); *Felix v. City of New York*, 344 F. Supp. 3d 644, 654–55 (S.D.N.Y. 2018) (same).

### III. Plaintiff Has Not Plausibly Alleged a Constructive Discharge

Defendant moves to dismiss plaintiff's constructive discharge claim. Though plaintiff's amended complaint does not specifically bring a claim for "constructive discharge," the complaint's allegation that plaintiff felt compelled to resign because "the relentless harassment and undue pressure exerted by Captain Inshiqaq became unbearable," Am. Compl. ¶ 50, fairly encompasses a theory of constructive discharge. *See Fitzgerald v. Henderson*, 251 F.3d 345, 367 (2d Cir. 2001) (holding that a complaint's factual allegations sufficiently raised a theory of constructive discharge even though it did not use that specific phrase).

"[A]n employee is constructively discharged when his employer, rather than discharging him directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily." *Petrosino v. Bell Atl.*, 385 F.3d 210, 229 (2d Cir. 2004) (citation omitted). A constructive discharge claim requires proof of working conditions even more intolerable than those

16

necessary to prove an "ordinary" hostile-work-environment claim. *See Penn. State Police v. Suders*, 542 U.S. 129, 146–47 (2004) (citation omitted). Accordingly, because plaintiff has not plausibly alleged a hostile work environment, *see supra* pages 10–16, she also has not alleged working conditions so intolerable as to have forced her to quit involuntarily. *See Chenette v. Kenneth Cole Prods., Inc.*, 345 F. App'x 615, 620 (2d Cir. 2009).

## CONCLUSION

For the foregoing reasons, defendant's partial motion to dismiss is granted. Plaintiff's claims are dismissed as time barred to the extent they rely on the conduct of Gary Sylvester. Plaintiff's claims for hostile work environment under Title VII and the NYSHRL, and for constructive discharge, are dismissed for failure to state a claim.

SO ORDERED.

 /s/ Rachel Kovner
RACHEL P. KOVNER
United States District Judge

Dated: March 10, 2025
      Brooklyn, New York

17